# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLOSE ENTERPRISES INC. d/b/a CLOSE AUTO SALES, *on behalf of itself and all others similarly situated*, | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Plaintiff, | **No.** 1:20-cv-147 |
| v. | |
| ERIE INSURANCE GROUP AKA ERIE INSURANCE EXCHANGE, | |
| Defendant. | |

Plaintiff Close Enterprises d/b/a Close Auto Sales ("Plaintiff" or "Close Auto") brings this Class Action Complaint on behalf of itself and all others similarly situated (the "Class"), alleging relief against Defendant Erie Insurance Group a/k/a Erie Insurance Exchange ("Defendant" or "Erie") and avers as follows:

## NATURE OF THE CASE

1.     This is a class action seeking declaratory relief arising from Plaintiff and Class members' contracts of insurance with Defendant.

2.     In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in-store businesses must shut down nationwide, vehicle dealerships, including but not limited to Plaintiff's business, have suffered significant business losses. Because of the shutdown, Plaintiff and Class members could not sell automobiles from March 19, 2020, until May 8, 2020, when sales resumed with significant restrictions from Civil Authorities.

3.     Plaintiff and Class members' insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4.      As a result, Plaintiff and Class members are entitled to declaratory relief that their businesses are covered for all business losses that have been incurred in an amount greater than $5,000,000.

## JURISDICTION

5.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action is a class action; (3) there are members of the Class who are diverse from Defendant; and (4) there are more than 100 Class members.

6.      This Court has personal jurisdiction over Defendant Erie. At all relevant times Defendant has engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania. Defendant purposefully availed itself of personal jurisdiction in Pennsylvania because Defendant contracted to provide insurance to Plaintiff and Class members in Pennsylvania which is the subject of this case.  Defendant's principal place of business and headquarters are located in Pennsylvania.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 139128 U.S.C. § 1391(b)(1) and (2) because Plaintiff and Defendant are Pennsylvania corporations and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.      Plaintiff Close Auto is a Pennsylvania corporation with its principal place of business in Pennsylvania. At all relevant times, Plaintiff Close Auto has been authorized to do business in the Commonwealth of Pennsylvania. Close Auto owns, operates, manages, and/or

controls an automobile dealership located at 330 N Broad St, Grove City, PA 16127 ("Insured Property").

9.      Defendant Erie, an insurance carrier headquartered at 100 Erie Insurance Plaza, Erie, PA 16530, provides business interruption insurance to Plaintiff and Class members. Erie is a citizen of Pennsylvania.

10.      At all relevant times, Defendant issued an insurance policy to Plaintiff Close Auto (policy number is Q47 2051006) that included coverage for business interruption losses, incurred by Plaintiff from March 19, 2020 until May 8, 2020. *See* "Policy", attached hereto as Exhibit 1.

11.      The policy, currently in full effect, includes coverage for, among other things, business personal property, business income, and extended special business income.

12.      Plaintiff submitted a claim for a date of loss and was denied. Erie asserts its insurance policies do not provide coverage for business interruption closures unless there is physical damage to the property. Erie also asserts that closure for Civil Authority requires physical damages to the property. Finally, Erie asserts all losses are excluded when as a result of a virus. *See* Denial Letter, attached hereto as Exhibit 2.

## FACTUAL BACKGROUND

### I.    Insurance Coverage

13.      Plaintiff and Class members faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

14.      The terms of the Policy explicitly provide the insured with insurance coverage for actual loss of business income sustained, along with any actual, necessary and reasonable extra expenses incurred, when access to the Insured's property is specifically prohibited by Civil Authority Orders.  This additional coverage is identified as coverage under "Civil Authority."

15.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy provides coverage for all covered losses, including but not limited to direct physical loss and/or direct physical damage, unless a loss is specifically excluded or limited in the Policy.

16.     The Policy also provides coverage for damages resulting from business interruption when there is property damage.

17.     The Policy's virus or bacteria exclusion does not apply to the closure of Plaintiff's businesses as a result of an order issued by a Civil Authority due to the COVID-19 pandemic.  The virus or bacteria inclusion was also not properly included in the policy.

18.     Nonetheless, based on information and belief, Defendant has accepted policy premiums paid by Plaintiff and the Class with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the insured businesses be shutdown, or any related property damage.

19.     Defendant asserts any loss resulting from property damage or from Civil Authority Orders to cease normal business operations are excluded under the terms of the Policy's Virus or Bacteria Exclusion.  Defendant is wrong.  The COVID-19 pandemic has caused Plaintiff and the proposed Class property damage and physical loss.  Moreover, the Civil Authority Orders have also caused Plaintiff and the proposed Class to suffer compensable property damage and business losses.  Further, the Policy's Virus or Bacteria Exclusion clause does not apply to the COVID-19 pandemic.

## II.    The COVID-19 Pandemic

20.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured

4

Property would be a direct physical loss requiring remediation to clean the surfaces of the dental practice.

21.     On information and belief, the virus that causes COVID-19 remains stable and transmittable: in airborne aerosols for up to three hours; on copper for up to four hours; on cardboard for up to 24 hours; and on plastic and stainless steel for up to two to three days. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces     (last visited April 9, 2020).

22.     The CDC has issued a guidance recommending that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic[1] is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented procedures requiring the cleaning and disinfection of public areas prior to allowing them to re-open publicly due to COVID-19 contamination.

III.   **Civil Authority**

   **A. Pennsylvania**

25.     On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. See Exhibit 2.

---

[1] On March 11, 2020 the World Health Organization ("WHO") made the assessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

26.    On March 19, 2020, Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *See* Exhibit 3; https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 7, 2019).

27.    On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay-at-Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 5 Mercer County's stay at home order was lifted on May 8, 2020.

28.    The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists, resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

29.    Moreover, the United States District Court - Middle District of Pennsylvania also rejected a group of small business owners' Motion for a Temporary Restraining Order, premised on due process and the First amendment, on May 21, 2020. The Court stated, "This pandemic has presented impossible choices to government officials and private citizens alike, and we are not unmoved by the hardships Petitioners currently face. [However,] Petitioners have failed to prove that the Governor violated constitutional strictures in their issuance." *See Benner v. Wolf*, 20-cv-775 (W.D.Pa. May 21, 2020), attached hereto at Exhibit 6.

**B.  Other States**

30.    The shut-down Civil Authority Orders issued by Pennsylvania authorities covering Pennsylvania non-essential businesses are similar to Civil Authority Orders that have been issued nationwide by state and local civil authorities. *See* https://www.wsj.com/articles/a-state-by-state-guide-to-coronavirus-lockdowns-11584749351.

1. *Alabama*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are closed to the public, including entertainment venues, fitness centers, salons, nail parlors and certain retailers.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches closed.

2. *Alaska*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Unless locally restricted, open with social distancing.

3. *Arizona*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All mass gatherings of 10 or more people must be canceled or postponed.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Unless locally restricted, open with social distancing.

4. *Arkansas*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit; does not apply to unenclosed outdoor spaces or places of worship.

- **Businesses:** Gym and entertainment venues are closed. Hotels, motels and vacation rentals are restricted to authorized guests.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain operational during the daytime.

5. *California*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings in a single room or place are prohibited. Visitation to hospitals, nursing homes and other residential care facilities is restricted.

- **Businesses:** Nonessential businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some parks are fully closed. Local jurisdictions have closed some beaches.

6. *Colorado*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Public and private gatherings of any number are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain open, but playgrounds, picnic areas and campgrounds are closed.

7. *Connecticut*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit for social and recreational gatherings; 50-person limit for religious services.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** No statewide directive. Out-of-state visitors are strongly urged to self-quarantine.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails and grounds of state parks and forests are open with social distancing.

8. *Delaware*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Visitors from out of state who are not just passing through must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for exercise or dog walking. State parks remain open with restricted activity.

9. *Florida*

- **Travel outside home:** Senior citizens and those with significant medical conditions may not leave home unless for essential needs or to go to an essential job.

- **Gatherings:** No social gatherings in a public space with religious exemptions.

- **Businesses:** Nonessential services are closed to the public. Gun stores remain open.

- **Quarantines:** Visitors from outbreak hot spots, such as the New York tri-state area, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Florida state parks are closed. Most beaches are closed.

*10. Georgia*

- **Travel outside home:** Mandated social distancing and recommended mask-wearing outside. Older and at-risk residents can leave only for essential needs/work with limited visitors.

- **Gatherings:** 10-person limit, not applying to incidental or transitory groups of people going by each other.

- **Businesses:** Nonessential businesses and other entities may not permit gatherings at their premises.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-in allowed with capacity limits, sanitation requirements and dozens of other precautionary measures.

- **Beaches/parks:** Open, with social distancing.

*11. Hawaii*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Essential services must implement separate operating hours for high-risk populations.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks and public beaches are closed. All camping and lodging at parks is suspended.

*12. Idaho*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are prohibited. Visits to hospitals, nursing homes and residential-care facilities are restricted.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Drive-in theaters and churches are permitted.

- **Quarantines:** Persons entering the state of Idaho are required to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No camping in state parks.

*13. Illinois*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks, fish and wildlife areas, recreational areas and historic sites are closed.

*14. Indiana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking, biking, fishing, boating, birding, hunting and camping are allowed with social distancing.

*15. Iowa*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** Limited to 10 people.

- **Businesses:** Nonessential retail businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Parks remain open. Campgrounds are closed.

16. *Kansas*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit, exempting funerals and religious services with social distancing.

- **Businesses:** Residents may not leave home to patronize nonessential businesses, such as hair salons.

- **Quarantines:** Kansas residents who traveled to California, Florida, New York or Washington state after March 14—or visited Illinois or New Jersey after March 22—must self-quarantine for 14 days. The same applies to anybody who had close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out or curbside service only.

- **Beaches/parks:** Most parks are open.

17. *Kentucky*

- **Travel outside home:** Travel outside the state is restricted to essential needs/work.

- **Gatherings:** Mass gatherings prohibited; smaller gatherings are allowed with social distancing.

- **Businesses:** Nonessential retail must close.

- **Quarantines:** Anybody coming in from out of state—including residents—must self-quarantine for 14 days upon return.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks closed for overnight stays.

18. *Louisiana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some state parks are open for fishing, hiking and biking during the day.

*19. Maine*

- **Travel outside home:** Only for essential needs/work. No use of public transportation unless absolutely necessary. .

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers arriving in Maine, regardless of their state of residency, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Numerous parks and beaches closed.

*20. Maryland*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Senior-citizen activities centers are closed.

- **Quarantines:** People traveling into Maryland from anywhere outside Maryland are required to self-quarantine for 14 days with limited exceptions. (Guidance)

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State park beaches are closed. Some parks remain open.

*21. Massachusetts*

- **Travel outside home:** People and especially older adults are strongly advised to stay home as much as possible. (Advisory)

- **Gatherings:** 10-person limit. Applies to confined spaces, not parks and other outdoor spaces.

- **Businesses:** Nonessential businesses must close their physical workplaces and facilities to workers and customers. Groceries must reserve an hour in the morning for older customers.

- **Quarantines:** Arriving travelers from out of state are instructed to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No congregating on coastal beaches. State parks are open and campgrounds closed.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open, but campgrounds, overnight lodging facilities and shelters are closed.

*22. Minnesota*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** No statewide directive.

- **Businesses:** Entertainment and performance venues are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife management areas, state forests and state parks remain open. Campgrounds are closed.

*23. Mississippi*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for fishing. Beaches can re-open with social distancing.

*24. Missouri*

- **Travel outside home:**

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses must enforce social distancing. Essential retailers must limit occupancy.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and trails are open during the day.

*25. Montana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential social and recreational gatherings are prohibited, if social distancing ca not be maintained.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Nonwork travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Open with social distancing.

*26. Nebraska*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide travel quarantine. Mandatory quarantines required for Covid-19 patients and households.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No overnight camping at state parks, state recreation areas and wildlife management areas.

*27. Nevada*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** People may not congregate in groups of 10 or more.

- **Businesses:** Recreational, entertainment and personal-care businesses are closed, including casinos.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks in the greater Las Vegas area, including Valley of Fire and Rye Patch are closed. Other state parks remain open for day-use only.

*28. New Hampshire*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nine-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only

- **Beaches/parks:** Most park sites are open.

*29. New Jersey*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential retail businesses must close bricks-and-mortar premises. Recreational and entertainment businesses are closed to the public.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some local beach closures. All state parks and forests are closed to the public.

*30. New Mexico*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit in a single room or connected space outside residence.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** Arriving air travelers must self-quarantine for two weeks.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are closed.

*31. New York*

- **Travel outside home:** Only for essential needs/work. Individuals age 70 and older and those with compromised immune systems must stay home and limit home-visitation to immediate family members or close friends.

- **Gatherings:** Nonessential gatherings are prohibited.

- **Businesses:** Nonessential businesses limited to minimum operations or remote work. (Guidance)

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Mandatory quarantines for people who have been in close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Social distancing at state parks.

*32. North Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** People may go to public parks and outdoor recreation areas unless locally restricted.

*33. North Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** No statewide directive.

- **Businesses:** Personal-care services and recreational facilities are closed.

- **Quarantines:** Mandatory quarantine for residents returning from abroad or domestic travelers returning from a state with widespread community infection.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for day-use only.

*34. Ohio*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses and operations must cease all activities except minimum basic operations.

- **Quarantines:** Travelers arriving in Ohio should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife areas, forests and nature preserves remain open.

*35. Oklahoma*

- **Travel outside home:** Vulnerable individuals (older residents and those with underlying medical problems) are directed to stay home except when running essential errands or commuting to critical infrastructure jobs.

- **Gatherings:** 10-person limit. No visitors at nursing homes, retirement or long-term care facilities.

- **Businesses:** Nonessential businesses must suspend services.

- **Quarantines:** Arriving travelers from the New York tri-state area, California, Louisiana and Washington should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking trails, picnic tables, fishing areas and boat ramps are available for outdoor recreation.

*36. Oregon*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings over 25 people are canceled statewide. Oregonians are urged to avoid gatherings of 10 people.

- **Businesses:** Nonessential business closures.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No daytime or overnight visitors are permitted at any state park.

*37. Pennsylvania*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings are generally prohibited.

- **Businesses:** Non-life-sustaining businesses must close or operate remotely.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails, lakes, roads and parking are limited to "passive and dispersed recreation."

*38. Rhode Island*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit.

- **Businesses:** Noncritical retail businesses must cease operations.

- **Quarantines:** Mandatory two-week quarantine for out-of-state visitors.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State beaches and parks are closed.

*39. South Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings of three or more are prohibited if deemed a threat to public health.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Public beaches and access points to lakes, rivers and waterways are closed. Local restrictions on parks.

*40. South Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** Unnecessary gatherings of 10 or more prohibited.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** No statewide directive.

- **Beaches/parks:** No statewide directive.

*41. Tennessee*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Social gatherings of 10 or more people prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks have reopened for day-use only.

*42. Texas*

- **Travel outside home:** Texans must minimize in-person contact with people who are not in the same household. (A number of major counties have more explicit stay-at-home orders.) No visits to nursing homes or long-term care facilities unless providing critical assistance.

- **Gatherings:** 10-person limit.

- **Businesses:** No eating or drinking at bars and restaurants or visits to gyms, massage establishments, tattoo studios, piercing studios and cosmetology salons.

- **Quarantines:** Air travelers flying to Texas from New York, New Jersey, Connecticut, California, Louisiana or Washington—or Atlanta, Chicago, Detroit, Miami—must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks remain open. Some beaches are closed or limited to restricted activities.

*43. Utah*

- **Travel outside home:** High-risk individuals (older residents and those with serious underlying medical conditions) may leave only for essential needs/work. Others must stay home whenever possible.

- **Gatherings:** 10-person limit recommended.

- **Businesses:** Businesses must minimize face-to-face contact with high-risk employees.

- **Quarantines:** Two-week quarantine after traveling out of state or exposed to a person with Covid-19 symptoms.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks open to all visitors, except parks under local health order restrictions.

*44. Vermont*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are limited to 10 people.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Visitors must self-quarantine for two weeks unless traveling for an essential purpose.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** RV parks and campgrounds are closed with emergency shelter exceptions

45. *Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Recreation and entertainment businesses must close.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for fishing and exercising. State parks are open for day-use activities. Campgrounds are closed.

46. *Washington*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All gatherings of people for social, spiritual and recreational purposes are prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and recreational fisheries are closed.

*47. West Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit with some exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Two-week mandatory quarantines for people traveling into West Virginia from areas of substantial community spread of Covid-19.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Park lodges, cabins and campgrounds are closed.

*48. Wisconsin*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All public and private gatherings are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Self-quarantine recommended for out-of-state travelers.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks are closed.  Campgrounds are closed.

*49. Wyoming*

- **Travel outside home:** Residents urged but not required to stay home whenever possible.

- **Gatherings:** Limited to nine people.

- **Businesses:** Theaters, bars, museums, gyms, nightclubs and other public places are closed.

- **Quarantines:** People traveling to Wyoming for nonwork purposes must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No statewide directive.

31.     Further, on April 10, 2020 President Trump indicated his support insurance

coverage for business loss like that suffered by Plaintiff and the proposed Class:

> <u>REPORTER</u>: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

> <u>PRESIDENT TRUMP</u>: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I did not always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I do not see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I do not see it. I do not see it referenced. And they do not want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We ca not let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

32.     The President is articulating a few core points:

a.   Business interruption is a common type of insurance.

b.   Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

24

    c.  The COVID-19 pandemic should be covered unless there is a specific exclusion for pandemics.

    d.  If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

33.    The Civil Authority Orders and proclamations referenced herein, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true for businesses such as Plaintiff's, where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

## IV.    Impact on Plaintiff and the Class

34.    As a result of the Civil Authority Orders referenced herein, Plaintiff's businesses have been unable to sell automobiles.

35.    Plaintiff's business loss occurred when the Commonwealth of Pennsylvania Civil Authorities declared a State of Emergency on March 6, 2020. Plaintiff suffered further when Pennsylvania required all businesses to cease non-essential operations on March 19, 2020.

36.    Prior to March 19, 2020, Plaintiff was opened to all customers who had car buying needs.

37.    A declaratory judgment determining that the insureds are entitled to business loss coverage under the Policy is necessary to prevent Plaintiff and Class members from being left without bargained-for insurance coverage required to ensure the survival of their automobile dealership due to the Civil Authorities' response to the COVID-19 pandemic. As a result of these Civil Authority Orders, Plaintiff and Class members have incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses, which losses are covered under the terms of Defendant's insurance policies.

## CLASS ALLEGATIONS

38.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on

behalf of the following Class:

> All Automobile Dealerships who have suffered business interruption and lost income as a result of Civil Authority Orders issued in response to the COVID-19 pandemic.

39.    Upon information and belief, Defendant does not cover business interruption

services for all daycare centers in contravention to the uniform language contained in the insurance

policies it has issued to automobile dealerships centers.

40.    The exact number of the Class members is unknown as such information is in

exclusive control of Defendant. However, due to the nature and commerce involved, Plaintiff

believes the Class consists of hundreds of insureds nationwide, making joinder of the Class

members impractical.

41.    Common questions of law and fact affect the right of each Class member. Plaintiff

is seeking Declaratory Relief for all Class members who run daycare centers with similar polices

to Plaintiff. Declaratory relief will permit adjudication of the rights of all parties as to whether

Defendant's policies provide coverage for business interruptions losses the Class has suffered as a

result of Civil Authority Orders.

42.    Common questions of law and fact that affect the Class members include, but are

not limited to:

> a.    Whether Defendant was legally obligated to pay for business interruption as a result of Civil Authority Orders issued in response to the COVID-19 pandemic;
>
> b.    Whether Plaintiff and Class members have suffered "property damages" in accordance with the terms and conditions of Defendant's business interruption insurance policies;

    c.   Whether Plaintiff and Class members are excluded from coverage for losses they suffered due to the Civil Authority Orders as a result of the Virus or Bacterial exclusions contained in Defendant's insurance policies;

    d.   Whether Defendant is justified in denying Plaintiff and Class members' claims.

43.    The claims and defenses of Plaintiff, as a representative plaintiff, are typical of the claims and defenses of the Class because Defendant wrongfully denied that its policy covers claims to Plaintiff and the Class members.

44.    Plaintiff, as a representative plaintiff, will fairly and adequately assert and protect the interests of the Class.

    a.   Plaintiff has hired attorneys who are experienced in prosecuting class actions and will adequately represent the interests of the Class; and

    b.   Plaintiff has no conflict of interest that will interfere with the maintenance of a class action.

45.    A class action provides a fair and efficient method for adjudication of the controversy for the following reasons:

    a.   Prosecution of separate actions by individual Class members would create a risk of inconsistent and varying results against Defendant when confronted with incompatible standards of conduct; and

    b.   Adjudications with respect to individual Class members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications and substantially impair their ability to protect their interests.

46.    Defendant has taken steps to discourage the Class from submitting claims under their policies.  Defendant has sent a uniform letter to all Class members advising them that they do not have a claim under the terms of their policy. For this reason, Declaratory relief for the entire class is appropriate and necessary.

## CAUSE OF ACTION

## DECLARATORY RELIEF

47.　　Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

48.　　The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

49.　　An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a. The Civil Authorities' Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here that are proximately caused by the Civil Authority Orders issued in response to the COVID-19 pandemic;

    d. The Civil Authorities' Orders trigger coverage under the terms of the Policy;

    e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of its businesses in Pennsylvania due to physical loss\or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters; and

    f. The Policy provides business income coverage in the event that the COVID-19 pandemic directly or indirectly causes a loss or damage at the insured premises or immediate area of the Insured Property.

50.　　Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

51.    Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy

52.    Plaintiff further seeks a Declaratory Judgment to affirm that the Civil Authority Orders trigger coverage.

53.    Plaintiff further seeks a Declaratory Judgment to affirm that Defendant's Policies provide coverage to Plaintiff and the Class for any current and future business personal property losses, loss of business income, and extended special business income losses as a result of Civil Authority orders affecting the operation of their automobile dealership business property due to physical loss or damage caused by the COVID-19 pandemic.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

a.   For a declaration that the Civil Authorities Orders constitute an insured impairment on the operation of Plaintiff's Insured business Property.

b.   To certify the proposed Class under Rule 23(b)(2).

c.   To direct notice to the Class under Rules 23.

d.   For a declaration that the Civil Authorities' Orders constitute the type of restriction on business operations that is defined in the Policy.

e.   For a declaration that the Civil Authorities' Orders trigger coverage under the Policy.

f.   For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued Civil Authority closures of its businesses due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Policy's Civil Authority coverage parameters.

g.   For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

h.   For such other relief as the Court may deem proper.

## TRIAL BY JURY IS DEMANDED

Plaintiff hereby demands trial by jury.


Dated: June 9, 2020                                  Respectfully submitted,

                                                     */s/ Daniel C. Levin*

                                                     Arnold Levin, Esq.
                                                     Laurence Berman, Esq.
                                                     Frederick Longer, Esq.
                                                     Daniel Levin, Esq.
                                                     **LEVIN SEDRAN & BERMAN LLP**
                                                     510 Walnut Street, Suite 500
                                                     Philadelphia, PA 19106-3697
                                                     Telephone: (215) 592-1500
                                                     Facsimile: (215) 592-4663
                                                     alevin@lfsblaw.com
                                                     flonger@lfsblaw.com
                                                     dlevin@lfsblaw.com

                                                     Richard M. Golomb, Esq.
                                                     Kenneth J. Grunfeld, Esq.
                                                     **GOLOMB & HONIK, P.C.**
                                                     1835 Market Street, Suite 2900
                                                     Philadelphia, PA 19103
                                                     Telephone: (215) 985-9177
                                                     Facsimile: (215) 985-4169
                                                     rgolomb@golombhonik.com
                                                     kgrunfeld@golombhonik.com

                                                     Aaron Rihn, Esq.
                                                     **ROBERT PEIRCE & ASSOCIATES**
                                                     707 Grant Street, Suite 125
                                                     Pittsburgh, PA 15219
                                                     Telephone: (412) 281-7229
                                                     Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff and the Class*