**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLOSE ENTERPRISES, INC. d/b/a CLOSE AUTO SALES, *on behalf of itself and all others similarly situated*, | : : : | CIVIL ACTION |
| | : | Case No. 1:20-cv-147 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ERIE INSURANCE GROUP a/k/a ERIE INSURANCE EXCHANGE, | : : | |
| | : | |
| Defendant. | : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

## INTRODUCTION

Plaintiff, an automobile dealership, seeks insurance coverage for alleged financial losses stemming from the COVID-19 pandemic but fails to state a plausible claim for coverage under its insurance policy with Erie ("Policy").  Like most policies providing business interruption coverage, coverage under the Policy is triggered only by *direct physical* damage to property. Plaintiff's property was never directly or physically damaged.  As Plaintiff repeatedly admits, its business was supposedly closed due to governmental orders designed to prevent the person-to-person spread of the Coronavirus, not because of any physical property damage. As numerous courts have held (including dismissing a practically identical case against Erie), the Coronavirus damages people, not property, and hence the government shutdown orders issued during the Covid-19 pandemic do not trigger business interruption or extra expense coverage.

Nor is there coverage under the "Civil Authority" Policy provision.  Civil authority coverage under the Policy and governing law requires direct physical damage to property *other than* Plaintiff's property (but near to it), such that the damage to the nearby property causes a

civil authority to prohibit all access to Plaintiff's business.  This coverage is intended to cover the scenario where, for example, there is a fire or construction accident at a nearby property that causes the government to cut off access to the insured premises. The Complaint does not even allege—nor could it—any damage to nearby property, let alone damage that resulted in a civil authority denying access to the insured premises.

As other courts have held, there is no coverage for any business interruption, extra expense, or civil authority losses purportedly related to the Coronavirus pandemic, because business interruption policies like Erie's require, as the threshold for coverage, some direct physical damage to property, and neither the Coronavirus nor any executive orders aimed at impeding the person-to-person spread of the Coronavirus caused physical damage to the insured's property.

Were all that not enough, Plaintiff's claims are also excluded by the Policy's express exclusion of loss and damage caused by viruses (the so-called "Virus Exclusion"). More specifically, the policy is clear that it does not cover losses "resulting from *any virus*, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease."  As a virus that is capable of inducing physical distress, illness, and disease, the Coronavirus is, plainly, not an insured peril, even if Plaintiff's property was physically damaged by the Coronavirus (which it was not and could not have been).  For these reasons, as set forth more fully below, the Complaint fails to state a claim and should be dismissed with prejudice.

## **THE POLICY**

The Policy sets forth the basic "Insuring Agreement" as follows:

**SECTION I – COVERAGES**

**INSURING AGREEMENT**

> We will pay for direct physical "loss" of or damage to covered property at the premises described in the "Declarations" caused by or resulting from a peril insured against.

Ex. 1 at EIE-Close 0022.[1]  So, coverage is limited to the perils insured against.  The Policy's "Perils Clause" in turn provides:

### SECTION II – PERILS INSURED AGAINST

***

### ADDITIONAL INCOME PROTECTION – COVERAGE 3

**Covered Cause of Loss**

> This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy.

*Id*. at EIE-Close 0026.  Plaintiff's claim invokes "Coverage 3" within the Policy, which affords Additional Income Protection Coverage, Extra Expense Coverage, and Civil Authority Coverage as follows:

### ADDITIONAL INCOME PROTECTION – COVERAGE 3

**A.     Additional Income Protection Coverage**

> Income Protection means loss of "income" and/or "rental income" you sustain due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" from a peril insured against.

The term "interruption of business" is defined in the Policy as the "period of time" starting from date of the coverage-causing event and ending "on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality."  Ex. 1 at EIE-Close 0056.  "Loss" is defined to require an event that is "direct and accidental."  *Id*.

---

[1]  Plaintiff did not attach a complete copy of the Policy to its Complaint.  A complete copy is attached to Erie's Motion to Dismiss, which can be considered by this Court because Plaintiff's claims explicitly rely upon it.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Hence, this provision requires a "direct and accidental" occurrence requiring some physical repair, rebuilding, or replacement of damaged or destroyed property.

***

**B.      Extra Expense Coverage**

Extra expense coverage is provided at the premises described in the "Declarations" only if the "Declarations" show that Additional Income Protection Coverage applies to that premises.

"Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" from a peril insured against.

***

**C.      Additional Coverages**

**1.      Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

a.      Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

b.      The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

***

*Id*. at EIE-Close 0024 – EIE-Close 0025.

While Plaintiff does not, and cannot, meet its threshold burden of proving coverage under these provisions, the Policy contains a "virus exclusion" that provides:

4

**SECTION III – EXCLUSIONS**

***

**B.**     **Coverages 1, 2,** and **3**

We do not cover under Building(s) – Coverage 1, Business Personal Property and Personal Property of Others – Coverage 2, and Additional Income Protection – Coverage 3 "loss" or damage caused:

***

    16.    By or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease.

*Id*. at EIE-Close 0026 – EIE-Close 0027, EIE-Close 0029.

<u>**PLAINTIFF'S ALLEGATIONS**</u>

Plaintiff is an automobile dealership in Grove City, Pennsylvania.  Doc. 32 at ¶ 8.  It alleges that Governor Wolf issued a series of executive orders in March 2020 and April 2020 ("Executive Orders") that required all non-life-sustaining businesses to cease operations and close all physical locations, and directed Pennsylvanians to stay at home except to conduct certain activities.  Doc. 32 at ¶¶ 36-39.  Plaintiff alleges that the Executive Orders compelled it to close its business, thereby causing it to incur substantial loss of business income and additional expenses.  *Id*. at ¶¶ 2, 17, 23, 47, 53-56, 71.  Plaintiff seeks a declaration that it is entitled to coverage because it was forced to close its business due to Executive Orders.  *Id*. . ¶ 82.  Significantly,  Plaintiff does *not* allege that any property on its premises suffered damage from the Coronavirus.  Indeed, it does not even allege that the virus was on its property at all.

5

## ARGUMENT

## I.   INTRODUCTION

Fed. R. Civ. P. 12(b)(6) requires dismissal of any complaint that fails to allege a plausible and legally cognizable claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Plaintiff falls far short of these elementary pleading standards.

Every insured bears the initial burden of proving that it suffered a loss that falls within the risks against which its insurance policy affords coverage. *Peters Twp. Sch. Dist. v. Harford Acc. & Indem. Co.*, 833 F.2d 32, 37 (3d Cir. 1987) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275 (Pa. 1966)). Only if the insured makes this *prima facie* showing does the burden shift to the insurance company to prove the application of an exclusion. *Id.* Plaintiff fails to state a plausible claim of coverage, as it does not allege that direct physical loss of or damage to property located on its premises caused the closure of its business. Even if it could establish such coverage, however, its losses would be excluded by the Policy's virus exclusion.

## II.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY NECESSARY TO TRIGGER THE POLICY'S ADDITIONAL INCOME AND EXTRA EXPENSE COVERAGE

### A.   Physical Damage to Property is Required to Trigger Coverage

Plaintiff's Complaint fails to state a viable claim for Business Income or Extra Expense coverage because it contains no plausible allegation that the Coronavirus—or the Executive Orders designed to contain the virus—caused any physical damage to the Premises. Under the

Policy's Insuring Agreement, Erie need only "pay for *direct physical 'loss' of or damage to* Covered Property at the premises described in the 'Declarations' caused by or resulting *from a peril insured against*." *See* Ex. 1 at EIE-Close 0022 (emphasis added).  Under the Perils Clause, in turn, a "peril insured against" means "*direct physical 'loss'*" unless the loss is excluded or limited." *Id*. at 5 (emphasis added).  Read together, these policy definitions and terms emphasize a threshold requirement for direct and accidental *physical* damage to property at the insured premises.  *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("the words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure").  Plaintiff fails to plead any facts describing any direct physical loss or damage to its property and hence the Amended Complaint fails to state a claim.

This interpretation of the Policy is bolstered by the "period of restoration" clause, which makes clear that business interruption coverage "[e]nds on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality."  Ex. 1 at EIE-Close 0056.   The terms "repair," "rebuild," and "replace" all require that the damage contemplated by the insuring agreement is physical in nature.  *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005), which applied Pennsylvania law, is directly on point.   There, the insured's parking garage at Philadelphia International Airport lost significant revenue when the federal government grounded all air traffic in response to the 9/11 attacks,  thus decreasing traffic to the parking garage.   *Id*.   The district court held that the policy's business interruption coverage, which required "direct physical loss or damage," did not

cover the insured's loss because the parking garage did not suffer direct physical loss or damage. *Id.* at 282, 286-87. As the district court noted, the insured's claim was for economic losses unaccompanied by physical damage. *Id.* at 287-88. Such a claim is not covered by business-interruption coverage requiring "direct physical loss or damage." *Id.* In reaching this result, the court emphasized that the period of restoration clause would make no sense if physical damage was not required. *Id.* at 287. *See Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises *as opposed to loss of use of it*") (emphasis added); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 9 (N.Y. App. Div. 2002) (period of restoration clause would be rendered meaningless if there was coverage absent physical damage). Under the clear terms of the Policy, therefore, no coverage exists here because Plaintiff has not suffered a tangible, physical harm to its property—a harm that can be repaired.

### B. Courts Across The Country Have Dismissed Identical Claims

For these precise reasons, courts across the country have summarily dismissed policyholder complaints seeking business interruption coverage against insurance companies where, as here, the insured alleged that it lost business as a result of governmental edicts shutting down or limiting the insured's business. *See, e.g., Pappy's Barber Shops, Inc., et al v. Farmers Grp., Inc., et al.*, 2020 U.S. Dist. LEXIS 166808 (S.D. Cal. Sept. 11, 2020); *10E, LLC v. Travelers Indem. Co. of Connecticut, et al.*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, __ F.Supp.3d __, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC, et al. v. Erie Ins. Exch.*, 2020 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 6, 2020); *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, Case No. 1:20-cv-03311-VEC (S.D.N.Y. 2020) (attached as Ex. 2); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No.

20-258-CB (Mich. Cir. Ct. July 1, 2020) (attached as Ex. 3); *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581 (S.D. Fla. Aug. 8, 2020).[2] Like Plaintiff, each of the insureds in these cases alleged that executive orders in their respective jurisdictions, and not any damage to property caused by the Coronavirus, caused their business interruption losses. Courts dismissed the insureds' claims because the compelled closure of a business by an executive order is not physical loss or damage. *See supra*.

In *Malaube*, for example, the court held that the policy required some form of tangible physical damage to trigger coverage; the executive orders were not sufficient. *Malaube, LLC,* 2020 WL 5051581 at *5-6 (citing 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.")).  In reaching this result, the court (relying in part on Pennsylvania law, no less) noted that the period of restoration clause strongly supported this interpretation, as the words "repair" and "replace" would be meaningless in the absence of physical damage. *Id*. at *9 (*citing Philadelphia Parking Auth*., 385 F. Supp. 2d at 287 (applying Pennsylvania law)).[3]

---

[2] This Court may take notice of the existence of another court's opinion without converting a motion to dismiss to a motion for summary judgment. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[3] Similarly, in *Mudpie, Inc. v. Travelers Ins. Co of America*, 2020 WL 5525171, *4 (N.D. Cal. Sept. 14, 2020), the court dismissed a policyholder's COVID-19 business interruption claim in part on the basis of the period of restoration clause:  "The words 'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by physical in nature … But here, there is nothing to fix, replace or even disinfect for Mudpie to regain occupancy of its property").

*Pappy's Barber Shops* held that a barbershop's closure in response to closure orders did not trigger coverage under the barbershop's insurance policy. *See generally Pappy's Barber Shops, Inc.*, 2020 U.S. Dist. LEXIS 166808. Like Plaintiff's insurance policy, the business income and extra expenses coverages in the barbershop's insurance policy required, among other things, "direct physical loss of or damage to property at the [insured] premises." *Id*. at *6-9. Likewise, under the barbershop's policy, an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises …" was a prerequisite to civil-authority coverage. *Id*. at *9-10. The district court held that the barbershop failed to plausibly plead coverage due to the closure orders, as the closure orders themselves did not cause direct physical loss of or damage to property on the insured premises and the barbershop did not identify any direct physical loss of or damage to property at a location other than the insured premises. *Id*. at *6-10. As noted by the court, "[m]ost courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property." *Id*. at *4.

*10E, LLC* rejected the very approach Plaintiff takes here in holding that "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *10E LLC*, 2020 WL 5359653 at *4. 10E, LLC alleged that it suffered loss and damage to its property because closure orders restricted access to its business premises and limited the operation of its business. *Id*. at *1-2. The district court held that direct physical loss or damage occurs only when property suffers a "distinct, demonstrable, physical alteration," and that this requirement is not satisfied by "detrimental economic impact" and cannot be avoided by pleading "temporary impairment to economically valuable use of property as physical loss or damage." *Id*. at *4-5. As such, the district court

10

dismissed 10E, LLC's claim because it failed to plead the direct physical loss of or damage to property necessary to trigger the insurance policy's business interruption coverage.  *Id*.

The insureds in *Diesel Barbershop* likewise alleged that they suffered business interruption losses as the result of several executive actions taken in Texas in response to the outbreak of the  Coronavirus.  *Diesel Barbershop*, 2020 WL 4724305 at *1-3.  The district court held that their insurance policies' requirement of "direct physical loss" required tangible injury to property, *i.e.*, a "distinct, demonstrable physical alteration of the property," in order to trigger their business-interruption coverage.  *Id*. at *4-5.  The Texas orders did not cause such tangible injury to property, and, as such, the district court held that the insureds failed to plead the direct physical loss necessary to trigger the insurance policies' business interruption coverage.  *Id*.

*Rose's 1* involved a practically identical suit by insureds against Erie, and called upon the court to interpret a policy that had the same basic insuring agreement/perils language in this case.  *See Rose's 1, LLC*, 2020 D.C. Super. LEXIS 10.  Even without the virus exclusion, the court relied upon numerous cases nationwide, including those applying Pennsylvania law, in concluding that "courts have rejected coverage when a business's closure was not due to direct physical harm to the insured premises."  *Id*. at *9 (*citing Philadelphia Parking Auth*., 385 F. Supp. 2d at 287-88 (applying Pennsylvania law)).  Ultimately, the court held that the loss of use occasioned by a government edict, standing alone, does not qualify as the direct physical loss necessary to trigger a policy's business-interruption coverage.  *See id*. at *6-14.  Because the insured's losses were caused solely by the District of Columbia's closure orders, and not by direct physical harm to the insured premises, the court dismissed the insured's claims.  *Id*.

The Southern District of New York, in *Social Life Magazine*, was the first court to conclude that a business interruption caused by the outbreak of the Coronavirus and related

LEGAL02/40068170v4

closure orders did not meet the business-interruption coverage's requirement of direct physical loss of or damage to property, *i.e.*, direct physical loss of or damage to property.  *See generally* Ex. 2.  In denying the insured's motion for a preliminary injunction, the district court in *Social Life Magazine* observed:

| THE COURT: | What is the damage?  There is no damage to your property. |
| MR. FISCHBARG: | Well, the virus exists everywhere. |
| THE COURT: | It damages lungs.  It doesn't damage printing presses. |

***

| MR. FISCHBARG: | Mold spores, bacteria, virus, all those are physical items which damage whatever they are on, whatever they land on.  And in this case, the virus, when it lands on something and you touch it, you could die from it.  So – |
| THE COURT: | That damages you.  It doesn't damage property. |

*Id.* at 4-8.  Seeing the writing on the wall, the plaintiff withdrew its complaint before the court could issue its written opinion.

The Circuit Court of Michigan followed suit in *Gavrilides* in holding that the outbreak of the Coronavirus and responsive closure orders did not cause the direct physical loss of or damage to property necessary to trigger business-interruption coverage.  *See generally* Ex. 3. Like Plaintiff here, the insured argued that it had suffered physical loss because the closure orders prohibited it from operating its business and prevented customers from accessing the property, but the court dismissed this as "simply nonsense" because "it [came] nowhere close to meeting the requirement that ... there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building."  *Id.* at 20:14-18.  Rather, the policy's requirement of "direct physical loss of or damage to property" required "something with material

12

existence.  Something that is tangible.  Something … that alters the physical integrity of the property."  *Id*. at 19.  In other words, the business-interruption coverage required physical or tangible damage to, or the physical alteration of, property.  *Id*. at 18-20.

As set forth above, courts have repeatedly held in these COVID-19 business interruption cases that executive orders shuttering businesses are insufficient to trigger coverage under the four corners of the Policy and settled law.  Here, Plaintiff contends that it suffered losses due to the Executive Orders, and, just like in all the above cases, that is simply insufficient to trigger coverage.

Significantly, for decades, Pennsylvania courts have held that business interruption coverage is unavailable where a business is required to shutter its business due to executive orders spurred by the *apprehension* of some future harm, even if such future harm is a peril insured against (and here, it is not).  For example, in *Cleland Simpson Co. v. Fireman's Ins. Co. of Newark*, 11 Pa. D.&C.2d 607 (Lackawanna Cnty. C.C.P. 1957), *aff'd,* 140 A.2d 41 (Pa. 1958), a hurricane damaged a water main in Scranton.  The mayor, fearing the city lacked sufficient water to extinguish fires, ordered the closure of all businesses.  *Id*. at 609.  The insured sought business interruption coverage for its subsequent inability to access and operate its business, but, inasmuch as the business interruption coverage required destruction or damage, the court concluded that the "prohibition of access because of apprehension or probability of fire" did not trigger coverage.  *Id*. at 611-12.  Here, the Executive Orders were issued to prevent the person-to-person spread of the virus, and not in response to any physical injury to property.  There is no coverage under these circumstances.

**C.      Plaintiff Would Fail To State A Claim Even If It Suddenly Alleged That The Virus Was On Its Property**

Plaintiff does not allege the presence of the Coronavirus on its premises, but, even if it had so alleged (or seeks to conveniently allege in a further pleading), such averment would not save its Amended Complaint. Despite its bare allegations that the Coronavirus causes property damage, viruses do not cause property damage.[4] To the contrary, as the district court in *Social Life Magazine* aptly observed, the Coronavirus damages people, not property. *See* Ex. 2 at 4-6 ("It damages lungs. It doesn't damage printing presses …. That damages you. It doesn't damage the property").

Moreover, numerous courts have held—just as in *Social Life Magazine*—that invisible substances that harm people or can be cleaned off surfaces do not cause physical injury to property. *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23 (Ohio Ct. App. 2008) (holding that the insurance policy's requirement of "physical injury" required harm to the insured house that "adversely affect[ed] the structural integrity of the house" and that, therefore, the insurance policy did not afford coverage for mold staining that did not affect the structure of house). Any contamination of property by the Coronavirus can be easily remedied by cleaning and sanitizing the subject property. According to the Centers for Disease Control and Prevention, the Coronavirus can be wiped off of surfaces by simple cleaning using widely available cleaning

---

[4] Plaintiffs have not accurately stated the holding of *Friends of DeVito et. al v. Wolf*, 68 MM 2020 (Pa. April 13, 2020). Compl. ¶ 28. That case had nothing to do with insurance coverage, insurance policy interpretation, or property damage. Rather, it was an emergency case before the Pennsylvania Supreme Court to determine whether a candidate for political office could be forced to stop campaigning door-to-door in an effort to win an election. *Friends of DeVito*, therefore, cannot fairly be said to support Plaintiff's position that the Coronavirus causes physical loss or damage.

products from any local gas station, CVS, Target, or Walmart.[5]  Thus, like the mold staining in

*Mastellone*, and the bacteria contamination in *Universal Image Prods., Inc.*, any contamination

of Plaintiff's premises did not cause physical loss of or damage to its property.  *See also Mama*

*Jo's Inc. v. Sparta Ins. Co.*, __ F. App'x. __, 2020 WL 4782369 (11th Cir. Aug. 18, 2020)

(holding that a structure does not suffer direct physical loss where it merely needs to be cleaned).

What's more, even if the virus was on its property, Plaintiff admits that was not the

*reason* it closed its business.  Under the Policy, coverage exists only where the loss "*results*

*directly*" from or is "*caused by*" a peril insured against.  This is clear in the "Insuring

Agreement" as well as the "Income Protection Coverage" in "Coverage 3."  *See supra* pp. 2-3.

As Plaintiff readily admits, its losses were caused by the Executive Orders, which is not a peril

insured against.  And, because Plaintiff has admitted its losses were caused by the Executive

Orders, and not any damage to its property, there is simply no coverage under the Policy,

regardless of whether the virus happened to exist on the insured premises for some limited time.

Indeed, the Court can take notice of the fact that many businesses deemed "essential"

were allowed to stay open and did so, and people were permitted—and frequently required—to

stay in their houses even if they were ill, thus belying any argument that the Coronavirus caused

physical damage to property or made property uninhabitable.  Hospitals, supermarkets, hardware

stores, laundromats, big box stores like Walmart and the Home Depot, and scores of other

---

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (stating that one can simply wipe a surface down with "1/3 cup of bleach added to 1 gallon of water) (last accessed 9/17/2020).  This Court may take judicial notice of CDC guidelines without converting this Motion to Dismiss to a Motion for Summary Judgment.  *See Carmen R. v. Decker*, 2020 WL 2029337, at *10 (D.N.J. 2020) (taking judicial notice of the fact that the CDC's list of medical conditions that created a high risk of complications from the Coronavirus did not include anxiety, depression, and PTSD); *Black v. Columbus Pub. Sch.*, 2007 WL 2713873 (S.D. Ohio 2007) (taking judicial notice of information published on the CDC's website).

"essential" businesses where the Coronavirus was actually reported to be present did not suffer "physical damage," let alone physical damage that caused the business to shut down (as evidenced by the fact they remained open). Indeed, many businesses that were once required to be closed under various state orders have since been permitted to reopen—*despite the continued community spread of COVID-19*. If all properties exposed to the virus were physically "damaged" so that they were no longer usable, then all businesses—and all homes for that matter where someone tested positive—would have been shuttered and would remain shuttered now. But that is not what happened, because the Coronavirus does not damage property; it infects and harms people. The Executive Orders aimed to impede community spread through human-to-human transmission, not to buy time for demolition of, or repair to, damaged property. Plaintiffs *concede* this, by repeatedly alleging that their economic losses were caused by the Executive Orders, not by the virus.

In the end, Plaintiff does not plead that its business was interrupted as a consequence of direct physical loss of or damage to property on its premises, as it avers only that Governor Wolf's executive orders compelled it to cease operations and does not identify any physical or actual alteration of property that interrupted its business. As such, Plaintiff does not state a plausible claim that it suffered an interruption of business resulting from direct physical loss of or damage to property located on its premises, and, therefore, does not state a plausible claim for coverage under the Policy's Income Protection Coverage and Extra Expense Coverage.

## II.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE COVERAGE UNDER THE POLICY'S CIVIL AUTHORITY COVERAGE

The Policy's Civil Authority Coverage applies only if a peril insured against causes direct physical loss of or damage to property located *near* the insured premises and a civil authority, as the result of such off-site damage, prohibits access to the area immediately surrounding the

damaged property, including the insured premises itself. *See* Ex. 1 at EIE-Close 0025. Plaintiff does not even allege these facts, nor could it. Nowhere in the Amended Complaint does Plaintiff identify any off-site property that suffered damage, let alone plead that such damage was located within one mile of its premises, and that the Executive Orders were due to that off-site damage. Moreover, in each of the COVID-19 cases set forth above, courts also dismissed the policyholder's civil authority claim because the Coronavirus does not damage property (it damages people) so *ipso facto* there could be no physical damage to any nearby property that is a threshold requirement for coverage.

Beyond this, the Policy's Civil Authority Coverage is not triggered where, as here, the civil authority acts, not in response to property damage, but instead to prevent *some future loss*. *See United Airlines, Inc. v. Ins. Co.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) (civil authority coverage did not exist where the decision to halt operations at Ronald Reagan Washington National Airport in response to the 9/11 attacks was a response to fears of future attacks, and not damage to insured property); *Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 140 A.2d 41 (Pa. 1958) (no civil authority coverage where the Mayor of Scranton declared a state of emergency and shut down businesses to avoid a fire after a storm cut off the city's water supply, because businesses were closed due to the fear of damage, and not actual damage necessary to trigger coverage).[6]

---

[6] *See also Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (holding civil authority coverage must arise from a civil order "issued as a direct result of physical damage" to other property, and that civil authority coverage, therefore, did not exist where a business was closed due to a hurricane evacuation order); *Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (holding no civil authority coverage existed for business closure due to a city-wide curfew to prevent looting and rioting); *Kelaher Connell & Connor, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, at *7 (D. S.C. Feb. 24, 2020); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 U.S. Dist. LEXIS 11460, at *2 (S.D. Tex. Feb. 15, 2008) (no coverage where the order was issued due to a fear that a hurricane would

The Executive Orders upon which Plaintiff relies were, on their face, issued for the purpose of preventing the future spread of the Coronavirus among people, not to remedy any property damage.  *See* Exs. 4-7.[7]  This was made clear in *City of Butler v. Wolf*, 2020 U.S. Dist. Lexis 167544 (W.D. Pa. Sept. 14, 2020), declaring Pennsylvania's Coronavirus-related gathering limitations,  stay-at-home  order,  and  closures  of  "non-life-sustaining  businesses" unconstitutional.  As those restrictions pertained to businesses, the court noted that the state sought to prevent the spread of the virus but employed no data-based test to determine which businesses would be closed; rather, such decisions were "solely dependent on government discretion."  *Id.* at *75.  Despite the good intentions, the Executive Order "closing all 'non-life sustaining' businesses was so arbitrary in its creation, scope and administration as to fail constitutional scrutiny."  *Id.* at *83.  *See also id.* at *89 ("The manner in which [the state] … designed, implemented, and administered the business closures is shockingly arbitrary").

---

strike nearby but not due to actual physical damage); *Assurance Co. of Am. V. BBB Serv. Co.,* 593 S.E.2d 7, 7-9 (Ga. Ct. App. 2003) (court noted that if the hurricane evacuation order was issued due to the threat of future injury and not because of any already existing physical loss or damage, plaintiff would be barred from recovery); *Bros., Inc. v. Liberty Mut. Fire Ins. Co*., 268 A.2d 611 (D.C. Ct. App. 1970) (court interpreted the "direct loss" requirement to mean there had to be "loss proximately resulting from physical damage to the property or contents caused by a riot or civil commotion").

[7] These orders were issued as part of Governor Wolf's efforts "to monitor and plan for the containment and subsequent mitigation of COVID-19," and "to maintain situational awareness and coordinate the response to any potential COVID-19 impacts across the Commonwealth." Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1.  They also recognized that the  Coronavirus could potentially cause severe symptoms, including death, and the need to prepare for and respond to "this threat of imminent disaster and emergency."  Ex. 4 at 1.  Finally, those orders subsequent to Governor Wolf's declaration of a state of emergency were issued under the Secretary of Health's authority under 71 P.S. § 532 and 71 P.S. 1403 to "determine and employ the most efficient and practical means for the prevention and suppression of disease."  Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1.

While this Court need not weigh in on the constitutionality of the Executive Orders at this time[8], it is worth noting that Plaintiff's business was not closed, and nearby businesses were not closed, based on any determination of whether their *property* was damaged. *Id.* To the contrary, those decisions were made on a "shockingly arbitrary" basis by politicians hoping to prevent the person-to-person spread of the virus (but apparently lacking any coherent plan to achieve that result). *Id.* That is, there was no rational basis, the Court found, to permit Walmart and Home Depot to sell lamps and toiletries but not allow small businesses to do so. *Id.* at *95-96. And, as Erie has always argued here, the fact that big box and other stores were allowed to remain open, while other stores were shuttered, demonstrates that the virus did not damage property and render it unusable, because if that were the case *everything* would be closed. Arbitrary decisions in which the state on no rational basis picked winners and losers in closing businesses does not trigger civil authority coverage under the Policy, which requires a deliberate decision to prohibit access to the insured's property because of physical damage to nearby property.

## III.   PLAINTIFF'S CLAIMS ALSO FAIL UNDER THE POLICY'S "VIRUS EXCLUSION"

The Policy is clear that no coverage is available for any loss or damage caused "[*b*]*y or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease*." Ex. 1 at EIE-Close 0026 - EIE-Close 0027, EIE-Close 0029 (emphasis added). Courts throughout the country have dismissed identical policyholder claims on the basis that this "virus exclusion" bars coverage. *See, e.g., Diesel Barbershop*, 2020 WL 4724305 * 6-7; *Turek Enterprises, Inc. v. State Farm Mut. Automobile*

---

[8] Though if this Court agrees with *City of Butler* that the Executive Orders were unconstitutional, that would be additional grounds for rejecting civil authority coverage, as policy provisions tethered to government acts are not triggered where the governmental act is unconstitutional. *Kao v. Markel Ins. Co.*, 708 F. Supp. 2d 472 (E.D. Pa. 2010).

*Ins. Co.*, 2020 WL 5258484, *8-9 (E.D. Mich. Sept. 3, 2020); *Martinez v. Allied Ins. Co. of Am.*, 2020 WL 5240218 (M.D. Fla. 2020).

Obviously, the Coronavirus is a virus capable of inducing physical distress, illness, or disease.  Even if Plaintiff has plausibly alleged that the Coronavirus caused direct physical loss of or damage to property, whether located on or off the insured premises, any subsequent loss is clearly and unambiguously excluded by the Policy's express virus exclusion.  *See Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 33213345, at *3 (E.D. Pa. 2013) (holding that, to prove a comparable exclusion for losses caused by microorganism, the insurer must prove the presence of the microorganism and that such microorganism caused the damages at issue).

Under Pennsylvania law, "[w]hen the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014).  Pennsylvania courts have deemed policy exclusions disclaiming coverage for losses "caused by" or "resulting from" specified noncovered risks to be unambiguous and have applied their plain meaning. *See, e.g.*, *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. Super. Ct. 1989).  Here, the virus did not and could not cause direct physical loss of or damage to Plaintiff's property, so there is no coverage under Coverage 3.  But even if there was coverage under Coverage 3, it would then be excluded by the plain terms of the "virus exclusion."  That is what the Policy clearly says.

## CONCLUSION

In light of the above, Plaintiff has failed to state a plausible claim that its losses were covered under the Policy's Income Protection Coverage, Extra Expense Coverage, and Civil Authority Coverage.  This Court should, therefore, dismiss the Complaint in its entirety.

Respectfully submitted,

\_\_/s/ Paul K. Geer_____
Paul K. Geer, Esquire
Pa. I.D. No. 27675

\_/s/ Tara L. Maczuzak_____
Tara L. Maczuzak, Esquire
Pa. I.D. No. 86709

\_/s/ Jason H. Peck_____
Jason H. Peck, Esquire
Pa. I.D. No. 308111

DiBella, Geer, McAllister & Best, P.C.
Firm No. 099
20 Stanwix Street, Eleventh Floor
Pittsburgh, PA 15222
(412) 261-2900
(412) 261-3222 (Fax)
pgeer@dgmblaw.com
tmaczuzak@dgmblaw.com
jpeck@dgmblaw.com

\_/s/ Adam J. Kaiser_____
Adam J. Kaiser, Esquire
*Pro Hac Vice*

\_/s/ Tiffany L. Powers_____
Tiffany L. Powers, Esquire
*Pro Hac Vice*

Alston & Bird, LLP
90 Park Avenue
New York, NY 10016
(212) 210-9465
adam.kaiser@alston.com
tiffany.powers@alston.com

21